NOT FOR PUBLICATION

RECEIVED
DEC 20 2017
AT 8:30_____
WILLIAM T. WALSH___M
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EDWARD G. PETRAGLIA,

    Plaintiff,

v.

U.S. BANK, N.A., *in its direct capacity as a debt collector*; SELECT PORTFOLIO SERVICING, INC., *in its direct capacity as a debt collector, and as agent for U.S. Bank, N.A.*; MILSTEAD & ASSOCIATES, INC., *in its direct capacity as a debt collector*; GREGORY J. TENCZA; 314 ATLANTIC AVENUE – SPRING LAKE, LLC; ABC CORP. DEFENDANTS I – X; and JOHN DOE DEFENDANTS I – X,

    Defendants.

Civ. No. 17-6325

OPINION

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a motion to dismiss brought by Defendant Milstead & Associates, LLC ("Defendant Milstead"). (ECF No. 23.) Plaintiff Edward G. Petraglia ("Plaintiff") opposes. (ECF No. 27.) The Court has decided the motion after considering the written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendant Milstead's Motion is granted.

## BACKGROUND

Plaintiff brings this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for claims of "abusive, deceptive, and unfair" conduct by various actors related to the foreclosure of Plaintiff's home. (Compl. ¶ 1, ECF No. 1.) Defendant Milstead is the

1

law firm which represented the foreclosing bank in the underlying foreclosure action. (*Id.* ¶¶ 28–32.) Plaintiff was in default on his home mortgage, originally owed to Wamu Mortgage Pass-Through Certificates Series 2006-AR9, and Defendant U.S. Bank, N.A. ("U.S. Bank") initiated foreclosure proceedings in state court as successor trustee to the mortgage. (*Id.* ¶ 2.) Defendant Select Portfolio Servicing ("SPS") was the mortgage sub-servicer on behalf of U.S. Bank. (*Id.* ¶ 24.) Although Plaintiff's Complaint includes allegations against multiple defendants, for the purposes of this motion the Court will only recite facts relevant to the alleged conduct of Defendant Milstead.[1]

On March 28, 2017, in response to Plaintiff's request for a current offer of reinstatement, Defendant Milstead sent Plaintiff's foreclosure attorney a cover letter and enclosed mortgage loan reinstatement letter from SPS. (*Id.* ¶ 59.) The enclosed letter appeared to be a form letter in response to a borrower request for a reinstatement quote. (*Id.* ¶ 62.) The letter suggested it was an offer that could be accepted by performance. (*Id.* ¶ 63.) The letter advised Plaintiff that the mortgage could be reinstated if Plaintiff paid the Total Reinstatement Amount of $608,420.25 before the "Good to" date of April 14, 2017, at 5:00 PM Eastern Time. (*Id.* ¶ 68.) Plaintiff alleges this time period for performance was intentionally short, designed to expire imminently

---

[1] Plaintiff suggests that Defendant Milstead is liable for the wrongful acts of U.S. Bank and SPS "as a debt collector acting in concert with" these other Defendants. (*See, e.g.*, Compl. ¶¶ 32, 125; Pl.'s Br. at 9, ECF No. 27.) Plaintiff provides no legal support for this proposition. While a law firm acts as the agent of its client, the client is not assumed to be an agent of the law firm. Plaintiff has not alleged that U.S. Bank and SPS were enlisted by or acting on behalf of Defendant Milstead. Third Circuit case law suggests that a debt collector *client* may be vicariously liable for its debt collector *attorney's* misconduct undertaken on the client's behalf, but not vice versa. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("[A]n entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."). Accordingly, the Court will only consider the allegations of direct liability against Defendant Milstead for its own conduct or the conduct of its employees.

2

upon the letter's transmission. (*Id.* ¶¶ 67–68.) Plaintiff was attempting to secure funding from a third party, but he could not accept the offer before its April 14th expiration. (*Id.* ¶¶ 69–71.)

On April 28, 2017, the state court denied Plaintiff's motion to vacate the foreclosure judgment and to adjourn the sheriff's sale scheduled for Monday, May 8, 2017. (*Id.* ¶ 71.) However, having secured sufficient funding, on May 2, 2017, Plaintiff called SPS and requested a new reinstatement letter with a "Good to" date of Friday, May 5th at 5:00 PM—before the scheduled sheriff's sale of his property. (*Id.* ¶¶ 72, 75.) Thereafter, SPS failed to timely transmit such a letter, then faxed a letter with a "Good to" date of May 4, moved up the deadline to 2:00 PM, and ultimately refused to make a reinstatement offer in writing without Plaintiff offering proof of funds, thus changing the terms of the standard reinstatement practice. (*Id.* ¶¶ 76–117.) Without a concrete contractual offer, Plaintiff's third party funding source withdrew, and Plaintiff was unable to reinstate in the time allotted. (*Id.* ¶¶ 118–20.)

On Monday, May 8, 2017, Plaintiff sought to stay the sheriff's sale scheduled for 2:00 PM. (*Id.* ¶ 127.) Plaintiff presented the state court with a letter from his cousin dated May 7, 2017, offering to provide the funds to reinstate Plaintiff's loan or, in the alternative, pay off the loan in its entirety within a few days. (*Id.* ¶¶ 128–38.) Nelson Diaz, an attorney with Defendant Milstead, appeared in court by phone. (*Id.* ¶ 139.) Arguing on behalf of U.S. Bank, Mr. Diaz objected to the stay on the grounds that the original default occurred in January 2009, Plaintiff had ample opportunities to reinstate, U.S. Bank had repeatedly offered reinstatement but would not adjourn the sale without proof of funds, and U.S. Bank wished to pursue the sale. (*Id.* ¶ 140.)

Plaintiff alleges that Mr. Diaz's argument was an untruthful representation (*id.* ¶ 146) that failed to capture "the cacophony of mixed messages and signals, false leads and misdirection . . . [that] amount quintessentially to . . . abusive, deceptive, and unfair debt collection practices" on

the part of SPS and U.S. Bank (*id.* ¶ 145). Plaintiff asserts that Mr. Diaz, and through him Defendant Milstead, had a duty as a debt collector to be aware that his client truly wanted reinstatement, as evidenced by the events during the week of May 2nd, and to convey those wishes to the state court. (*Id.* ¶¶ 148–59, 168.) The judge declined to stay the sheriff's sale, acknowledging that Plaintiff had no right to reinstate and that the bank would not agree (*id.* ¶ 157), and the sale went forward as scheduled on May 8th (*id.* ¶ 164).

Plaintiff filed this Complaint on August 22, 2017. (ECF No. 1.) Plaintiff's Complaint contains three Counts: (I) violation of the FDCPA (Compl. ¶¶ 47–204); (II) violation of the New Jersey Consumer Fraud Act ("NJCFA") (*id.* ¶¶ 205–09); and (III) common law fraud and false accusation (*id.* ¶¶ 210–16). Plaintiff pleads common law false accusation exclusively against Defendant Tencza, the buyer of the property. (*Id.* ¶ 14.) On September 21, 2017, Defendant Milstead requested an extension of time to answer until October 12, 2017 (ECF No. 15), which the Clerk of Court granted (ECF entry dated 9/22/2017). On November 1, 2107, Defendant Milstead filed a proposed consent order for an extension of time to file a motion or responsive pleading until that day. (ECF No. 21.) Defendant Milstead simultaneously filed the Motion to Dismiss presently before the Court. (ECF No. 23.) Magistrate Judge Arpert signed the Consent Order on November 1, 2017, making the Motion to Dismiss timely filed. (ECF No. 24.) Plaintiff submitted opposition on December 4, 2017.[2] (ECF No. 27.) The Court now considers the Motion.

---

[2] Defendant Milstead's original moving papers, filed November 1, 2017, noticed this motion for December 18, 2017, with responses due December 4, 2017. (ECF No. 23.) Based on the filing deadline in the Clerk of Court's published regular list of motion days, *see* L. Civ. R. 78.1(a), the return date should have been December 4, 2017, "the next regular motion day," L. Civ. R. 7.1(c)(1)–(2). The docket listed the motion day as December 4, 2017. (*See* ECF entry dated 11/02/2017.) In its discretion, the Court has considered all submissions on this Motion. However, going forward, the parties are advised to follow Local Civil Rule 7.1(c)—requiring leave of Court to set a return date other than the first regular motion day following the filing date.

## **LEGAL STANDARD**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786, 789 (3d Cir. Jan. 11, 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

A district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 12(d), but "may consider certain narrowly defined types of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). First, a court may consider "a document integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Second, a court may examine any "undisputedly authentic document that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."

*Id.* (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## ANALYSIS

Defendant Milstead has moved to dismiss Plaintiff's claims on four grounds: (1) the litigation privilege bars all common law claims; (2) plaintiff has failed to sufficiently plead the FDCPA claim; (3) the NJCFA claim fails as a matter of law because Defendant Milstead is a learned professional to whom the act does not apply and Plaintiff lacks an ascertainable loss; and (4) the common law fraud claim fails for lack of specificity required under the federal pleading standard. (Def.'s Br. at 5–12, ECF No. 23-4.) These arguments are addressed below.[3]

### I. New Jersey's Common Law Litigation Privilege

"New Jersey's absolute litigation privilege applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011) (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)). Plaintiff concedes that element one is satisfied but argues the facts lack clarity as to the final three elements. (Pl.'s Br. at 33, ECF No. 27.) The Court disagrees. Plaintiff's allegations concern Defendant Milstead's litigation-related communications made in representing its client, a litigant during the foreclosure

---

[3] In its reply brief, Defendant Milstead purports to "join[], incorporate[], and adopt[]" for the first time a series of arguments put forth in a separate motion to dismiss filed by Defendants U.S. Bank and SPS (ECF No. 26). (Def.'s Reply at 10, ECF No. 29.) These arguments were not raised in Defendant Milstead's original brief, and therefore Plaintiff does not have an opportunity to respond. "As this argument was raised for the first time on reply, the Court declines to consider it." *Lee v. Calvary Korean United Methodist Church*, 2015 WL 3649100, at *3 n.1 (D.N.J. June 11, 2015); *see also, e.g., Stern v. Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief." (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 71 n.5 (3d Cir. 1994); *Kost*, 1 F.3d at 182)).

proceeding, to achieve the objects of that litigation. Both the letter dated March 28, 2017 sent by Defendant Milstead and the arguments made in court on May 8, 2017 by Mr. Diaz "fall squarely within the scope of the New Jersey litigation privilege." *Ogbin v. Fein, Such, Kahn & Shepard, P.C.*, 414 F. App'x 456, 458 (3d Cir. 2011); *accord Allen*, 629 F.3d at 369. The litigation privilege applies to common law fraud claims and to claims under the NJCFA. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 524–25 (D.N.J. 2012). Therefore, Counts Two and Three of Plaintiff's Complaint are dismissed with prejudice as to Defendant Milstead.[4] However, Third Circuit case law establishes that "the FDCPA does not contain an exemption from liability for common law privileges." *Allen*, 629 F.3d at 369; *see also Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 176–78 (3d Cir. 2015) (allowing FDCPA claims on the basis of a foreclosure complaint filed in court). Accordingly, the Court must proceed to Defendant Milstead's remaining arguments on Count One of Plaintiff's Complaint.

II. Pleading a Cause of Action Under the FDCPA

A. *Plaintiff's Present Complaint*

In order to state a claim under the FDCPA, a plaintiff "must allege that '(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 671 (D.N.J. 2017) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299,

---

[4] Having determined that the absolute litigation privilege bars all common law and NJCFA claims (Def.'s Br. at 5–6), the Court need not consider Defendant Milstead's alternative arguments that Plaintiff fails to meet the heightened pleading standard required for common law fraud or that Plaintiff lacks an ascertainable loss and Defendant Milstead is beyond the reach of the NJCFA because it is a learned professional (*id.* at 11–12).

303 (3d Cir. 2014)). Defendant Milstead does not contest that Plaintiff is a consumer under the first element, but does contest Plaintiff's pleading of the other three requirements.

First, to allege that Defendant Milstead is a debt collector within the meaning of the act, *see* 15 U.S.C. § 1692a(6), "a plaintiff must allege facts indicating that a defendant (i) has a business whose principal purpose is the collection of debt or (ii) has a business that regularly collects or attempts to collect debts owed or allegedly owed to a third party." *Allen v. LaSalle Bank, N.A.*, 2012 WL 1898612, at *5 (D.N.J. May 23, 2012); *see also Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005) ("Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act."). Plaintiff alleges that Defendant Milstead "is a self-acknowledged debt collector within the meaning of the FDCPA, and exists as a law firm business entity engaged, upon information and belief, primarily in mortgage loan debt collection and prosecuting home foreclosures on behalf of client banking institutions and mortgage loan servicers." (Compl. ¶ 28.) This case is factually distinct from similar cases where the defendant law firm's letter itself stated that the defendant was attempting to collect a debt, *see, e.g., Allen*, 2012 WL 1898612, at *6 ("FSKS admitted in the payoff quote itself that the quote was an attempt to collect a debt."). (*See* Def.'s Br. at 7; Def.'s Br., Ex. B, ECF No. 23-5.)[5] Nevertheless,

---

[5] In his opposition brief, Plaintiff alleges that Defendant Milstead admitted in a letter dated April 21, 2017 to being a debt collector. (*See* Pl.'s Br. at 5, 7–8.) In his brief, Plaintiff purported to enclose that letter as Exhibit A, but no such exhibit was filed and, regardless, the Court could not consider that letter at this juncture. No such letter or allegation is mentioned in Plaintiff's Complaint. (*See* Compl. ¶¶ 68–71 (jumping in time from April 14 to April 28, with no mention of any communications or conduct on April 21).) "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Accordingly, the Court cannot consider this line of argument asserted by Plaintiff. The March 28 letter, which is incorporated by reference in the Complaint and was properly submitted by Defendant Milstead as an exhibit, did not disclose in its text that Defendant Milstead was a debt collector.

8

accepting as true the facts in the Complaint, Plaintiff's allegations establish that Defendant Milstead is plausibly considered a debt collector within the meaning of the FDCPA.

Second, Defendant Milstead denies that it was engaged in an attempt to collect a debt. Under Third Circuit law, "communications that include . . . offers of alternatives to default . . . may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245–46 (3d Cir. 2014). Therefore, Defendant Milstead's argument that it was "at no time . . . attempting to 'collect' anything" is unavailing. (Def.'s Br. at 7.) The Court has reviewed the March 28th letter Defendant Milstead submitted, which is appropriate for the Court to do on a motion to dismiss, *see In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d at 287, and finds that the letter offered an opportunity for Plaintiff to enter into a reinstatement agreement, well within the parameters of debt collection activity defined by the Third Circuit.

Defendant Milstead argues, third, that Plaintiff's FDCPA claim fails because Plaintiff does not plead violation of any particular provision of the FDCPA. (Def.'s Br. at 6 (citing Compl. ¶ 1).) Plaintiff's only references to specific sections of the FDCPA relate to the forms of relief to which Plaintiff claims entitlement. (*See, e.g.*, Compl. ¶¶ 15, 216.) Plaintiff does not allege with precision which provisions of the FDCPA Defendant Milstead's conduct allegedly violated, and therefore cannot establish a plausible claim to relief under the FDCPA. Count One must therefore be dismissed as to Defendant Milstead.

### B. Possibility of Amendment

In general the Third Circuit has instructed that where a complaint is vulnerable to Rule 12(b)(6) dismissal, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "An

amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citing *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998)); *see also Pushkin v. Nussbaum*, 2014 WL 4543069, at *3 (D.N.J. Sept. 11, 2014) ("[O]ne test for whether an amended complaint would be futile is the standard for a motion to dismiss . . . ."). The Court does not find that it would be inequitable to allow amendment, but, in light of Defendant Milstead's alternative arguments, there is a question whether it would be futile to grant Plaintiff leave to amend Count One of his Complaint.

Defendant Milstead first argues that the complained-of communications were in response to Plaintiff's requests, putting them beyond the scope of actionable communications under the FDCPA. (Def.'s Br. at 7–8 (citing Compl. ¶ 59).) The case law Defendant Milstead cites suggests that communications sent in response to a debtor's request are not actionable "initial communications" within the meaning of 15 U.S.C. §§ 1692e, 1692g. *See, e.g., Stuart v. Udren Law Offices P.C.*, 25 F. Supp. 3d 504, 506–09 (M.D. Pa. 2014) (collecting cases). However, it is not clear whether courts' rejection of the FDCPA's applicability to consumer-initiated communications extends to all provisions of the FDCPA, and, based on both the Complaint and Defendant Milstead's submissions, it is not clear whether the March 28th correspondence was truly an initial communication, *see, e.g., DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1056 (D.N.J. 2011). Accordingly, amendment is not futile on this basis.

Defendant Milstead next argues that, because its communications were transmitted to Plaintiff via Plaintiff's own counsel, the competent attorney standard applies and any FDCPA claim must fail because a competent attorney would not have been misled or deceived by Defendant Milstead's communications. (Def.'s Br. at 8–10. *But see* Pl.'s Br. at 33–35.) There is

no consensus among district courts in the Third Circuit as to what standard governs FDCPA claims premised on communications between opposing counsel. In fact-dependent analyses, some courts have applied the competent attorney standard, *see, e.g., Simon v. FIA Card Servs. N.A.*, 2015 WL 1969411, at *6–7 (D.N.J. Apr. 30, 2015) (whether a competent attorney would have been misled or deceived by the communications), and others the least sophisticated debtor standard, *see, e.g., Beard v. Ocwen Loan Servicing, LLC*, 2015 WL 5707072, at *5 (M.D. Pa. Sept. 24, 2015) (whether the least sophisticated debtor or consumer would have been misled or confused by the communications), *reconsideration denied*, 2016 WL 344300 (M.D. Pa. Jan. 28, 2016). The Third Circuit has not squarely addressed which standard applies to all FDCPA claims, *see Simon v. FIA Card Servs. NA*, 639 F. App'x 885, 888–89 (3d Cir. 2016), but it has rejected the application of the competent attorney standard to certain FDCPA provisions, *see Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 270 (3d Cir. 2013); *see also Simon*, 2015 WL 1969411, at *6 ("[T]he Third Circuit's decision . . . leaves open the door for application of the competent attorney standard if the sophistication of the party receiving the communication is relevant to the inquiry."). At this juncture, it would not be futile to allow Plaintiff leave to amend his FDCPA claims; until the Court is advised as to which provisions of the FDCPA Plaintiff implicates, it cannot determine what standard of conduct would apply. Therefore, Count One of Plaintiff's Complaint is dismissed as to Defendant Milstead. Plaintiff is granted leave to amend.

## CONCLUSION

For the reasons stated herein, Defendant Milstead's motion is granted. An appropriate order will follow.

Date: 02/20/17

ANNE E. THOMPSON, U.S.D.J.

11